FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

98 JUL 28 AM 11: 50

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **Eugene H. Hatcher,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-97-N-1639-NE |
| **United States of America, et al.,** | ] |
| Defendant(s). | ] |

ENTERED

JUL 28 1998

### Memorandum of Opinion

Plaintiff, Eugene H. Hatcher ("Hatcher") sues the United States of America and the Secretary of the Army, Togo D. West, Jr. (collectively "defendants"), alleging that they discriminated against him on the basis of his age when he was not considered and selected for promotion to a position of Supervisory Research Analyst, GM-1515-14 in the Fire Support Program Executive Office, Multiple Launch Rocket System Project Office, Program Management Division, Budget Review and Analysis Branch at Redstone Arsenal, Alabama in December 1991 (the "MLRS" position). Hatcher claims the Army failed to promote him because of age in violation of: (1) the Age Discrimination in Employment Act ("ADEA"); 29 U.S.C. § 621, *et seq.*; (2) the Civil Rights Act of 1964, as amended ("Title VII"); 42 U.S.C. § 2000e, *et seq.*; (3) the Civil Service Reform Act of 1978 ("Civil Service Reform Act"); 5 U.S.C. § 2101, *et seq.*; and (4) the Federal Personnel Manual, Chapter 335. *Complaint* at ¶¶ 1, 11, 19. Mr. Hatcher also attempts to directly implicate his rights under the Due Process Clause of the Fifth Amendment.

The case is presently before the court on the defendants' motions to dismiss all defendants except the head of the agency, Togo D. West, and for summary judgment as to

29

all claims. The motions are fully briefed and the parties have been afforded an opportunity to be heard orally. They are, therefore, ripe for decision. Upon due consideration, each motion will be granted and the action will be dismissed with prejudice.

## I. The Facts for Summary Judgment Purposes.[1]

In the fall of 1991, there was a vacancy for the position of GM-896/1515-14 in the Fire Support Program Executive Office, Multiple Launch Rocket System Project Office, Program Management Division, Budget Review and Analysis Branch at Redstone Arsenal, Alabama. In connection with the vacancy, a new draft job description was submitted which was later classified as an interdisciplinary position 896/1515. It was advertised as a dual 896/1515 position with employees from both the 896 series and the 1515 series being eligible to apply.

Referral lists from both series, 896 (Engineering) and 1515 (Operations Research Analyst) were requested by personnel in the Civilian Personnel Office (the "CPO").[2] The 896 referral list, which was created locally at Redstone Arsenal, was received on October 9, 1991. The plaintiff, not being an engineer, was not included on the 896 referral list. Kenneth Luttrell, Chief of the Program Management Office of the Multiple Launch Rocket System, the selecting official for the vacancy, did not make a selection from that list and returned it to the CPO. The 1515 referral list, which was generated by the Department of the

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

[2] Donna Morris, in her statement to this court, says she requested the lists "at the same time." She previously testified, at the EEO hearing in this matter, that she did not request the GS-1515 list until November 21, 1997. *Compare Morris Declaration* at ¶ 7 *with Plaintiff's Response to Movants' Initial Submission in Response to Exhibit D of the Court's Order* at Exhibit 19. This difference in her testimony is not material for summary judgment purposes.

2

Army, was received at the CPO on or about December 6, 1991. That list was not then sent to Mr. Luttrell, however, because the time in which eligible persons were allowed to express interest in the vacancy did not expire until December 30, 1991. Mr. Hatcher was included on the 1515 referral list. This list, containing the plaintiff's name, was never sent to Mr. Luttrell because the selection about which Mr. Hatcher now complains was made before December 30, 1991. Thus, Mr. Luttrell did not see the 1515 list before the selection decision was made and was not aware that Mr. Hatcher's name appeared on that referral list.

On or about November 25, 1991, the CPO was notified that the position of Roger Farris, a GM-14 employee within the Fire Support Program Executive Office, had been eliminated, making him an excess employee. Mr. Farris was qualified for inclusion on both the 896 and the 1515 referral lists.

It was the practice of the CPO to give priority to employees whose positions had been eliminated when filling vacancies with the same organization and encouraged managers to laterally transfer qualified and competent excess employees to vacant positions in order to permit such employees to continue their careers with the United States Government. Ms. Donna P. Morris, then a Personnel Staffing Specialist in the CPO, determined that Mr. Farris was qualified to fill two vacancies in the Fire Support Program Executive Office and inquired of Mr. Luttrell's supervisor, Colonel DeVaney, to determine whether Mr. Farris could be placed in one of those positions.

Col DeVaney asked Mr. Luttrell to consider Mr. Farris to fill the vacancy in question here. Col DeVaney was aware that Mr. Farris's position had been eliminated; that he was already a GS-896-14, making it unnecessary to promote him; and, that he was qualified to

3

fill the vacancy. As noted above, Mr. Luttrell did not see the 1515 series referral list before deciding to transfer Mr. Farris and, in fact, did not see it until after Mr. Hatcher had filed his EEO complaint.

At the time of the employment decision in question, Mr. Hatcher was fifty-three years old, working as a grade GS-1515-13 Operations Research Analyst, and Mr. Farris was forty-four, working as a GM-896-14 Supervisory Industrial Engineer.

### 1.  The Plaintiff's Contentions and Additional Facts.

The court has identified three separate alleged factual bases upon which Mr. Hatcher grounds his claims.[3]  First, he denies that the selection of Mr. Farris is the issue in this lawsuit.  Rather, he argues that the alleged act of discrimination about which he complains occurred before the selection process began. According to Mr. Hatcher, the defendants "systematically excluded and deliberately precluded [him] from competing for the position . . . by fraudulently changing the series."  Mr. Hatcher claims that, on August 22, 1991, defendants changed the eligibility requirements for the MLRS position, giving first consideration to the series GM-896-14 engineers, in order to exclude him from "fair and

---

[3] In responding to the defendants' motions, Hatcher adds three additional claims that he has not previously pleaded. First, he claims that the defendants promoted a younger GM-1515-14, without "experience with MLRS systems, where Plaintiff has approximately fourteen years experience with MLRS systems." However, according to his evidentiary materials, this alleged promotion took place on October 10, 1997. It is clear then, if Hatcher has a claim based upon this conduct, he has not exhausted administrative remedies with respect to it. He cannot jump start this law suit with allegations of that conduct.

Also, in his response, Hatcher states that defendants "again provided false information to deny [him] the opportunity for fair and equal consideration for promotion to a GM-896/1515-14 position as chief, Program Planning/Cost Estimating Branch, [although he] was previously detailed to the position." Again, however, the evidentiary materials suggest this conduct occurred, if at all, between May and July, 1997.

Finally, Mr. Hatcher claims the defendants have retaliated against him. Specifically, he claims the defendants "brought reprisals against [him] in work assignments, poor ratings for training, and travel restrictions." He states, "The younger engineers were assigned [his] work assignments, [and he] was nominated for Department of the Army Suggester of the Year, but Defendants withheld [his] nomination papers." The court is not prepared, at this stage of the proceedings, to allow the plaintiff to add this "stealth" amendment to his claims in order to avoid summary judgment. If, as the plaintiff's claims, the defendants retaliated against him for objecting to their conduct in filling the vacancy at issue here, he knew that on July 3, 1997, when he filed this action, more than five years after he failed to obtain the position he wanted.

equal promotion consideration." Mr. Hatcher contends that because the defendants "prohibited" first consideration of the series GS-896-14 engineering candidates for merit promotion, they violated the Civil Service Reform Act of 1978 and the Federal Personnel Manual. Mr. Hatcher also contends that defendants made the series change in order to "select a younger and less experienced engineer for the position and exclude Hatcher from fair and equal promotion consideration."

Second, Mr. Hatcher bases his age discrimination claim upon the contention that defendants removed the selection process from the "merit promotion system" and instead filled the position with a lateral transfer in order to deny him the promotion. Finally, Mr. Hatcher claims the defendants attempted to transfer him to another project in order to eliminate him from consideration for the MLRS position. According to Mr. Hatcher, the defendants "offered to assist [him] to transfer to the Special Management Project Office to remove [him] from merit promotion consideration."[4]

In support of his claims, Mr. Hatcher relies upon personal memos, unsworn personal statements, unauthenticated documents, and facts with little, if any, relevance.[5] The court has carefully scrutinized Mr. Hatcher's evidentiary submissions in order to glean any facts in his favor for which there may be any genuine dispute. Thus, the facts which the court

---

[4] According to Mr. Hatcher's "Memorandum for the Record," this offer by Mr. Luttrell involved a promotion to a grade GS-14 position, the same grade as was the position he alleges he was illegally denied. However, according to Mr. Hatcher, he declined the promotion, stating, "I had paid my dues in new project offices and was not interested at my age and years approaching retirement." Instead, according to Mr. Hatcher, he told Mr. Luttrell that he wanted to be considered for the MLRS position, but was told, "it would be difficult to promote from the 1515 list . . . because of the large number of overseas returnees."

[5] Review of Mr. Hatcher's many allegations suggests he may perceive that he has been the object of any number of on-the-job slights. Many of them appear to be unrelated to any claim of prohibited discrimination. The court has taken a rather liberal view of what may, or may not, be material in his age discrimination claims.

5

recites include all the plaintiff's allegations of facts for which there is any reasonable basis in the record and which may be material to any issue.

The parties do not dispute that the MLRS position was originally classified as a series GM-345/343-14 position, and that defendants changed the classification to a dual series GM-896/GM-1515-14 position.[6] However, Mr. Hatcher claims that the series GM-343-14 supervisory position managed lower level series GS-343 personnel and required a 343 series manager.[7] No series 896 or series 1515 personnel worked in the branch on August 22, 1991, when the series was changed. Mr. Hatcher contends that defendants hired a series GS-896-13 engineer and "placed him on detail in the branch to justify a GM-896-14 manager over 343 series personnel." Moreover, Mr. Hatcher contends that only after it transferred Mr. Farris did defendants "officially" reassign the series GS-896-13 to the branch, in order "to justify the 896 series supervisor." Defendants admit that they changed the position of a series GS-896-13 Industrial Engineer, Steven Watson ("Watson"), within the organizational structure, but deny it was done for the reason the plaintiff claims.

Mr. Hatcher claims that in May 1995, after a personnel audit by the U.S. Army Civilian Personnel Evaluation Agency ("USACPEA"), defendants were directed to "change the GS-896-13 series to GS-343-12." Mr. Hatcher states that the defendants complied with the mandate of the USACPEA audit and transferred the series GS-896-13 employee, Watson, to another branch. Mr. Hatcher claims that this mandate by the USACPEA personnel audit

---

[6] Mr. Hatcher contends this series change from GM-343-14 to GM-896/GM-1515-14 violated: (1) the Civil Service Reform Act, specifically 5 U.S.C. §§ 2301-02; (2) the Federal Personnel Manual, Chapter 335; and (3) merit promotions regulations; MICOMR 690-28.

[7] Defendants argue, but cite no evidence to support the claim, that series 896 supervisors are permitted to supervise series 343 personnel.

6

proves that defendants had "arbitrarily, unlawfully and willfully violated applicable civil service regulations governing the filling of the position and merit system promotions."

Mr. Hatcher also argues that defendants attempted to transfer Mr. Farris through reassignment to the Special Management Project office before it transferred him to the MLRS position, and that the Special Management Project Office refused to accept him. Defendants neither admit nor deny this assertion, but rather, argue that it is "irrelevant to the issue of age discrimination."

Finally, Mr. Hatcher argues that he was excluded from the MLRS position because defendants selected Job Element Descriptions ("JEDs") to request merit promotion skills for both the 896 and 1515 series, and the JEDs selected required an engineering degree for both series. While the defendants admit that they selected JEDs requiring an engineering degree, they deny they did so with any discriminatory intent.

## II. Standards for Decision.

For purposes of ruling on a motion to dismiss, the allegations of the complaint are taken as true and are construed most favorably to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A claim should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A claim may be dismissed when the allegations demonstrate that the plaintiff does not have a claim. *Bruce v. Wade*, 537 F.2d 850 (5th Cir.); *Hepperle v. Johnston*, 544 F.2d 201 (5th Cir. 1976).

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

8

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-

9

movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. Discussion.

### A. Motion to Dismiss.

Hatcher named as defendants both the United States of America and Togo D. West, Secretary, Department of the Army, in his official capacity. However, the head of the agency is the only appropriate defendant in actions by federal employees under Title VII or the ADEA. *Canino v. United States E.E.O.C.*, 707 F.2d 468, 472 (11th Cir. 1983); *Ellis v. United States Postal Service*, 784 F.2d 835 (7th Cir. 1986); *Romain v. Shear*, 799 F.2d 1416, 1418 (9th Cir. 1986), *cert. denied*, 481 U.S. 1050 (1987). As such, the United States of America should be dismissed as defendants to Mr. Hatcher's age discrimination claims. Moreover, to the extent there may be other viable claims asserted, the United States enjoys sovereign immunity. The motion of the United States to dismiss will be granted.

### B. Motion for Summary Judgment.

#### 1. Claims under the ADEA.

The plaintiff claims the defendant discriminated against him because of his age, in violation of the ADEA,[8] when it failed to promote him to the position to which Mr. Farris was transferred. The ADEA prohibits an employer from discharging or otherwise discriminating

---

[8]The ADEA provides, in part:

It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
(3) to reduce the wage rate of any employee in order to comply with this chapter. 29 U.S.C. § 623.

10

against an employee on the basis of age, 29 U.S.C. § 623. An ADEA plaintiff is not required to show that age was the sole motivating factor in an adverse employment decision, only that age was one reason and that it made a difference in the outcome. *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173 (10th Cir. 1986). Individuals who are at least 40 years of age, 29 U.S.C. § 631, may seek to establish a *prima facie* case in one of three ways: (1) by direct evidence of discriminatory intent; (2) by meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) through statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

Direct evidence, the conventional form of proof, is often the most difficult to muster. In *Carter v. City of Miami*, the Eleventh Circuit explained that discriminatory remarks had to specifically show discriminatory intent. *Carter*, 870 F.2d at 582. The *Carter* court stated that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." *Carter*, 870 F.2d at 582. Comments that are merely inappropriate and condescending are not recognized as direct evidence. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 611 (11th Cir. 1987), *cert. denied*, 467 U.S. 1204, 104 S. Ct. 2385, 81 L. Ed. 2d 344 (1984). For example, the Eleventh Circuit held that direct evidence of a discriminatory nature existed where an experienced school principal and a superintendent of education testified "unequivocally" that racial motivation was present in the discharge of several school employees. *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769 (11th Cir. 1982). The Eleventh Circuit has also found direct evidence of discrimination where a plaintiff and a union representative testified that an employer expressly stated that he refused to place the plaintiff in a certain job

11

position because she was a woman. *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1553 (11th Cir. 1983), *cert. denied*, 467 U.S. 1204 (1984).

In the absence of direct evidence of discrimination, the plaintiff may rely upon the framework established in *McDonnell Douglas,* 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). First, the plaintiff bears the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination, *Burdine*, 450 U.S. at 253, which "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id*. at 254. Second, if the plaintiff carries his initial burden, the burden shifts to the defendants to rebut the presumption of illegal employment discrimination by articulating "some legitimate reason" for the employment decision at issue. *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802). Finally, the plaintiff bears the burden of showing that the defendants' proffered reasons are pretextual or that discriminatory intent was more likely the cause of the employer's actions. *Burdine*, 450 U.S. at 253, 256. Presentation of a *prima facie* case creates a rebuttable presumption of discrimination, but it does not alone establish a genuine issue of material fact sufficient to go to the jury. *Carter*, 870 F.2d at 585. Because the plaintiff bears the burden of establishing pretext, once the defendants offers a legitimate, nondiscriminatory reason for , an adverse employment action, the plaintiff must present significantly probative evidence on that issue to avoid summary judgment. *Id*. The plaintiff at all times retains the ultimate burden of persuading the trier of fact that the employer discriminated against the plaintiff. *Burdine*, 450 U.S. at 253.

To establish a *prima facie* case under the ADEA with circumstantial evidence, a plaintiff must prove: (1) that he is a member of the protected group; (2) that an adverse

employment action was taken against him, e.g. discharge, demotion, or failure to hire, recall, or promote; (3) that the person hired was sufficiently younger to create an inference of age discrimination; and (4) that he was qualified for the position for which he was rejected. *Carter*, 870 F.2d at 582 (citations omitted); *see also O'Connor v. Consolidated Coin Caterers Corp.*, 116 S. Ct. 1307, 1310 (1996) (modifying the third element to include replacement by persons also within the protected class). The *prima facie* case requirement was "never intended to be rigid, mechanistic, or ritualistic." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978). However, "[a] prima facie case may be established only when there is a basis for inferring that discrimination is the reason for the employment decision . . . " *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1390 (11th Cir. 1983), *cert. denied*, 464 U.S. 1018 (1983).

Finally, the plaintiff may utilize statistical evidence. However, statistics "are of relatively low importance in an individual disparate treatment case." *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1253 n.8 (7th Cir. 1990). The Eleventh Circuit has said "statistics alone cannot make a case of individual disparate treatment." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131 (11th Cir. 1984).

Here, Mr. Hatcher presents no direct or statistical evidence to support a claim of age discrimination. Instead, he attempts to establish his claim of age discrimination using the shifting inferences method of *McDonnell Douglas* and *Burdine*. Under this standard, Mr. Hatcher has not presented sufficient evidence in opposition to defendants' motion for summary judgment upon which a reasonable jury could find a *prima facie* case of age discrimination.

13

A superficial review of the evidence would seem to favor the plaintiff in establishing a *prima facie* case of discrimination. First, Mr. Hatcher, at the age of fifty-three, was a member of a protected group. Second, he suffered an adverse employment decision when the defendants failed to promote him to the MLRS position. Third, although Mr. Farris was greater than forty years old at the time of the alleged discrimination, he was nine years younger than the plaintiff. Both were within the protected class. The difference in age between them is sufficient to create an inference that the defendant acted on that basis. *O'Connor*, 116 S. Ct. at 1310. Fourth, Mr. Hatcher was apparently qualified for the MLRS position. However, the court is satisfied that Mr. Hatcher has still not created a genuine issue regarding his *prima facie* case of age based discrimination. The *McDonald Douglas* test is not to be applied in a mechanical and ritualistic manner. *Furnco, supra*. Instead, the facts must suggest the presence of intentional discrimination in the employment decision.

In this case, Mr. Hatcher cannot establish a logical connection between the alleged discrimination and the individual elements of his *prima facie* case. First, Mr. Hatcher and Mr. Farris, as candidates for a grade 14 position, were not similarly situated. Mr. Farris was already a grade 14 and Mr. Hatcher was only grade 13. Moving Mr. Farris to the MLRS position was a lateral transfer, requiring no promotion, whereas to have awarded the position to Mr. Hatcher would have been to give him a promotion. Second, the defendants' decision-maker, Luttrell, did not consider Mr. Hatcher for the position because he did not have the series GS-1515 list with Mr. Hatcher's name before him when he made the decision to transfer Mr. Farris. Third, if the claim is that there was illegal discrimination in the failure of the CPO to provide the list to Luttrell, then Mr. Hatcher was treated no differently than were the thirty-six others on that list, presumably individuals of varying ages.

14

Finally, if Mr. Farris had not been transferred the agency would have been left with the dilemma of what to do with Mr. Farris, then an excess employee. Based upon all the evidence construed in a light most favorable to Mr. Hatcher and accepting all reasonable inferences in his favor, no rational trier of fact could find a *prima facie* case of illegal age discrimination in these circumstances.

Even if Mr. Hatcher could establish his *prima facie* case, the defendants have articulated a legitimate non-discriminatory reason for the action they took and Mr. Hatcher has not produced sufficient evidence to create a genuine issue of material fact regarding whether that reason was pretextual. The defendants have shown that the CPO had a practice of trying to place qualified employees whose positions have been abolished in vacant positions. Mr. Farris' position was abolished and, according to the then current requirements for the MLRS position, Mr. Farris was qualified. Mr. Hatcher presents no evidence that this policy of filling vacancies with a "qualified excess employee," or the application of this policy in this situation, was based upon his age or any other prohibited reason. Furthermore, Mr. Hatcher presents no evidence that when the defendants changed the qualifications for the MLRS position, it discriminated against him because of age, especially when at least thirty-six others were similarly affected by the change. Therefore, even if Mr. Hatcher could establish a *prima facie* case of age discrimination, no reasonable jury could conclude that the defendants' legitimate non-discriminatory reason for its action was a pretext or that discriminatory intent was more likely the cause of defendants' actions.

Therefore, the defendants motion for summary judgment on the age discrimination claims is due to be granted.

## 2. The Other Claims.

Mr. Hatcher also seeks to found claims on (1) Title VII, (2) the Civil Service Reform Act, (3) the Federal Personnel Manual, and (3) by implication, the Due Process Clause of the Fifth Amendment.[9] The plaintiff has presented no evidence of any adverse action against him based upon factors prohibited under Title VII. Furthermore, the rights and remedies available under the ADEA are the exclusive remedy for federal employees claiming age discrimination. *Lehman v. Nakshian*, 453 U.S. 156 (1981). Furthermore, neither the Civil Service Act nor the Federal Personnel Manual create a private cause of action for federal employees. *Cutts v. Fowler*, 692 F.2d 138 (D.C. Cir. 1982); *Favors v. Ruckelshaus*, 569 F. Supp. 363 (N.D. Ga. 1983); *Watson v. U.S. Dept. of Housing & Urban Dev.*, 576 F. Supp. 580 (N.D. Ill. 1983); *see also Spagnola v. Mathis*, 809 F.2d 16, 20-21 (D.C. Cir. 1987); *Davis v. U.S. Postal Service*, 675 F. Supp. 225 (M.D. Pa. 1987). The defendants are due summary judgment on all these claims.

Finally, the due process clause of the Fifth Amendment does not create a substantive right to employment. *Pinar v. Dole*, 747 F.2d 899, 913 (4th Cir. 1984), cert. denied, 471 U.S. 1016 (1985) (federal employee has no constitutional right to his job ); *accord Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (due process clause of the Fourteenth Amendment safeguards only those property interests defined by independent sources). The due process clause of the Fifth Amendment does, however, create some rights to procedural due process. *Arnett v. Kennedy*, 416 U.S. 134 (1974), *reh'g denied*, 417 U.S. 977 (1974);

---

[9] Mr. Hatcher also requested attorney fees and compensatory damages and punitive damages. However, the ADEA does not create a right for the payment of attorney fees. *Lewis v. Federal Prison Industries*, 953 F.3d 1277 (11th Cir. 1992). In any event, a losing party is not entitled to have his opponent pay his attorney fees. Of course, Mr. Hatcher has incurred no attorney fees because he has represented himself throughout this litigation. Additionally, the ADEA does not create a right for compensatory or punitive damages against a federal defendant. *See C.I.R. v. Schleier*, 515 U.S. 323, 115 S.Ct. 2159, 2162 (1995).

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). Procedural due process for a government employee such as Mr. Hatcher is available under the Administrative Procedures Act ("APA"); 5 U.S.C. § 701, *et seq.*

In *Grier v. Secretary of Army*, the Eleventh Circuit considered a race discrimination claim by a civilian employee of the Army. 799 F.2d 721, 723 (11th Cir. 1986). Specifically, the plaintiff in *Grier* alleged that she was denied due process by selection of someone "less qualified," and by the failure to follow Army regulations. *Id.* at 725. Although the plaintiff in *Grier* never specifically set forth her APA claim, the Eleventh Circuit affirmed the district court, which treated the claim as pursuant to the APA and granted summary judgment for the defendants on that basis.[10] *Id.* In *Grier*, the Eleventh Circuit stated, "Plaintiff's only recourse, if any, is under the APA, as an action against a federal employer for an alleged constitutional violation, i.e. a *Bivens*-type action, is not available." *Id.* at 725, n.3 (citations omitted).

Section 702 of the APA grants the right to judicial review to any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." The reviewing court shall, according to the APA,

> hold unlawful and set aside agency action, findings, and conclusions found to be—
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;

---

[10] It is far from clear that Mr. Hatcher includes a claim under the APA here. The court addresses only because of its duty to construe his *pro se* pleading liberally.

17

> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. 5 U.S.C. § 706.

However, even artful pleading cannot transform a claim under the ADEA into a suit under the APA. *Davidson v. U.S. Dept. of Energy*, 838 F.2d 850 (6th Cir. 1988), *cert. denied*, 108 S.Ct. 2849 (1988). The only purpose of the APA is to insure that the federal agency satisfied legal requirements in taking its action and that the action was not arbitrary and capricious. *Id.*

In this case, even if Mr. Hatcher does seek review of agency action by this court pursuant to § 702 of the APA, the court finds no evidence that the agency decisions were "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," including the decision redefine the qualifications for the MLRS position, the decision to fill the position with another individual whose former position was abolished, or the decision not to promote Mr. Hatcher when he was one of thirty-seven otherwise eligible candidates. All that is required is that a rational connection exist between the evidence and the agency decision. *Tackitt v. Prudential Ins. Co. of America, Inc.*, 758 F.2d 1572, 1575 (11th Cir. 1985). Here, the agency has provided rational reasons for the choice of Mr. Farris instead of Mr. Hatcher, and this court is not empowered to substitute its judgment for that of the agency decision makers, even if it were inclined to do so. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974), *reh'g denied*, 420 U.S. 956 (1975).

Furthermore, Mr. Hatcher was afforded a full and complete opportunity to redress his complaint of age discrimination. First, Mr. Hatcher filed a formal complaint with the Equal Employment Office at the Redstone Arsenal. The agency accepted the complaint for

18

investigation and complied with all procedural and regulatory requirements. Then, Mr. Hatcher requested an administrative hearing on the complaint before an EEOC Administrative Judge. At that hearing, Mr. Hatcher was afforded the opportunity to present evidence, call witnesses and confront witnesses who were adverse to his claim. Next, based upon the findings of the Administrative Judge, the Department of the Army issued its final agency decision. Finally, Mr. Hatcher received a full review by the EEOC, which affirmed the final agency decision. Therefore, Mr. Hatcher was afforded his right to due process under the Fifth Amendment.

Accordingly, Mr. Hatcher's other claims, those pursuant to Title VII, the Civil Service Reform Act, the Federal Personnel Manual, and the Due Process clause of the Fifth Amendment, are due to be dismissed as a matter of law.

## IV. Conclusion.

Defendants' motion to dismiss all defendants except the head of the agency is due to be granted. Likewise, defendants' motion for summary judgment, as to all claims, is due to be granted. Accordingly, an order consistent with this opinion will be entered contemporaneously with it.

Done, this 28th of July, 1998.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE